### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| MARK KRAGEL | : | CIVIL ACTION |
| | : | No. 21-78 |
| v. | : | |
| | : | |
| V.I. WATER AND POWER | : | |
| AUTHORITY, et al. | : | |
| | : | |

### MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                                 **January 19, 2023**

Plaintiff Mark Kragel objects to Magistrate Judge Ruth Miller's Order of December 22, 2022, denying Kragel's motion to disqualify opposing counsel. Because Judge Miller's thorough and well-reasoned decision is not "clearly erroneous or contrary to law," Kragel's objections will be overruled. *See* 28 U.S.C. § 636(b)(1)(A).

In October of 2021, Kragel instituted this action against his ex-employer, Virgin Islands Water and Power Authority (WAPA), as well as its former executives Lawrence Kupfer and Anthony Thomas. He alleges Defendants violated his First Amendment rights by terminating his employment in response to a critical comment about the Black Lives Matter movement on social media. Am. Compl. ¶¶ 15-16, ECF No. 90. All three Defendants are represented by Attorney Simone Francis.

Francis also represents WAPA in an earlier case filed by Kenval Thomas, in which Kragel is also a defendant. Mot. Disqualify 2, ECF No. 78. Francis does not represent Kragel in the Thomas case. He appears pro se. However, WAPA, Kragel, and a third defendant entered into a Joint Defense and Confidentiality Agreement ("JDA"), where they worked together on discovery, motions practice, and a common defense strategy. *Id.* Kragel contends Francis served as "the de

1

facto lead counsel in the Thomas case," and that she was "privy to confidential work product and privileged information." *Id.* at 2-3.

On September 8, 2022, Kragel moved to disqualify Francis from this suit, claiming she has a conflict of interest based on the JDA in the Thomas case. *Id.* at 1. Judge Miller denied Kragel's motion on December 22, 2022. Kragel subsequently filed objections to Judge Miller's Order, claiming the decision was "clearly erroneous and contrary to law." *Id.* at 2.

Pursuant to Federal Rule of Civil Procedure 72(a), a party may file objections to a magistrate judge's order addressing non-dispositive matters within fourteen days of the order. A party's failure to object to a particular ruling waives the objection. *United Steelworkers of Am., AFL-CIO v. N.J. Zinc Co., Inc.*, 828 F.2d 1001, 1006 (3d Cir. 1987). An objecting party faces a high hurdle: a district court judge must uphold the magistrate judge's order unless the findings of fact are "clearly erroneous," or the conclusions of law are "contrary to law." 28 U.S.C. § 636(b)(1)(A). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City N.C.*, 470 U.S. 564, 573 (1985) (internal quotation marks and citation omitted). A decision is contrary to law when it "misinterpret[s] or misapplie[s] applicable law." *Prentice v. OfficeMax N. Am., Inc.*, Civ. No. 13-71, 2021 WL 2386123, at *2 (D.V.I. June 10, 2021) (quoting *Alarmax Distribs., Inc. v. Honeywell Int'l, Inc.*, Civ. No. 14-1527, 2015 WL 12756857, at *1 (W.D. Pa. Nov. 24, 2015)).

The applicable law on resolving a motion to disqualify directs courts to balance the "right of a party to retain counsel of his choice" and "the public perception of and the public trust in the judicial system." *Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 363 (D.V.I. 2004). "The district court's power to disqualify an attorney derives from its inherent authority to supervise the

professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). When an attorney violates the Rules of Professional Conduct, counsel may be disqualified "to eliminate the threat that the litigation will be tainted." *Lamb*, 333 F. Supp. 2d at 363. The party seeking disqualification of opposing counsel bears the burden of showing such taint. *Id.*

Kragel objects to (1) Judge Miller's refusal to apply a presumption of shared confidences, (2), her analysis of the conflict under Model Rule of Professional Conduct (MRPC) 1.9, and (3) her characterization of the facts regarding the chronology of the instant motion. Each objection will be addressed in turn.

Judge Miller correctly refused to apply a presumption of shared confidences to the relationship between Kragel and Francis created by way of the JDA in the Thomas case. In the Virgin Islands, in order to avoid the disclosure of confidential information when deciding a motion to disqualify, there is a presumption that such information passed between an attorney and a former client. *Bluebeard's Castle, Inc. v. Delmar Marketing, Inc.*, 886 F. Supp. 1204, 1208 (D.V.I. 1995). However, this presumption only applies to former *clients*. *See id.* ("[T]he Court must first examine whether an attorney-client relationship arose . . . *If such relationship existed*, the Court must then examine whether a substantial relationship exists.") (emphasis added). "[I]n the absence of a direct attorney-client relationship, a showing that confidences were actually received must be made to impute knowledge sufficient to warrant disqualification." *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 251 (D.N.J. 1998).

Judge Miller's finding that Kragel and Francis did not share an attorney-client relationship was not clearly erroneous. A JDA may create an implied attorney-client relationship where the plaintiff shared confidential information with the attorney and did so with the "reasonable belief"

3

that the attorney represented them. *Takeda Pharm. Co. Ltd. v. Zydus Pharm (USA) Inc.*, Civ. No. 18-1994, 2019 WL 3284673, at *3 (D.N.J. June 6, 2019) (internal citation omitted). However, the terms of the agreement here expressly disclaimed the creation of such a relationship, so it would have been unreasonable for Kragel to believe Francis represented him in the Thomas case. JDA ¶ 16, ECF No. 98-2. Because no attorney-client relationship was formed, the presumption of shared confidences does not apply.

In contrast with the presumption in attorney-client relationships, no conflict of interest arises in the context of this type of JDA "unless the attorney actually obtained relevant confidential information." *United States v. Stepney*, 246 F. Supp. 2d 1069, 1080 (N.D. Cal. 2003).[1] Judge Miller correctly applied the law in determining whether Francis should be precluded from representation adverse to Kragel because "information actually shared by [Kragel] with [Francis] is material and relevant to the later matter." Restatement (Third) of Law Governing Lawyers § 132 cmt. g(ii). In evaluating this so-called "joint defense privilege" or "community-of-interest privilege," a judge must make factual findings as to "the content of the information which was exchanged and whether or not the present controversy is substantially related to the prior one." *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977).

Judge Miller's analysis of the community-of-interest privilege was spot on. First, Kragel was unable to describe with any precision the confidential information he allegedly shared with Francis. His vague claims that he shared details about "his professional information, his family situation, his settlement strategy, [and] other legal strategy/theories" are insufficient to create a conflict of interest. Mot. Disqualify 11, ECF No. 78; *see also Cohen v. Oasin*, 844 F. Supp. 1065,

---

[1] Kragel incorrectly cites this case as support for his contention that a presumption should have been applied. Obj. 8, ECF No. 107. In reality, *Stepney* stands for the opposite rule.

1067 (E.D. Pa. 1994) ("Vague and unsupported allegations are not sufficient to meet [the disqualification] standard."). Second, Kragel failed to explain how this case is substantially related to the Thomas matter. Suits are substantially related when the "nature and scope" of the earlier and present lawsuit bear a strong resemblance, and when there is a substantial possibility that "the client might have disclosed confidences during the earlier representation which could be relevant and detrimental to the present action." *Bluebeard's Castle*, 886 F. Supp. at 1209. The Thomas matter involves a claim of defamation which allegedly occurred in 2015; this suit arises from a claim of wrongful termination due to exercise of First Amendment rights in 2020. Given the different facts, at different time periods, involving different legal claims, Judge Miller's finding that the "nature and scope of the two lawsuits are wholly unrelated" is correct. Mem. Dec. 22, 2022, at 23, ECF No. 105. Further, Kragel failed to make any specific argument as to how the information he supposedly shared with Francis could be "relevant and detrimental to the present action." *Bluebeard's Castle*, 886 F. Supp. at 1209. Judge Miller's factual findings as to the information allegedly exchanged and the relationship between the two lawsuits were not clearly erroneous. And her holding that the community-of-interest privilege does not require Francis' disqualification was not contrary to law.

Kragel further objects to Judge Miller's analysis of MRPC 1.9, which governs conflicts of interest involving former clients. This Court agrees with Judge Miller's legal conclusion that Rule 1.9 does not apply to the case at hand. By its express terms, Rule 1.9 covers only former clients; Kragel was never Francis' client. *See* D.C. Ethics Op. 349 § B (2009) ("Rule 1.9 does not preclude adversity to non-client joint defense group members."); *Matter of Galardi*, 644 B.R. 65, 74 (Bankr. M.D. Ga. 2022) ("Accordingly, Rule 1.9(a) simply does not apply because Ms. Galardi is not a 'former client' of Ms. Christy."). Kragel does not object to this finding. Instead, he argues that

5

Judge Miller misapplied the law defining a "substantial relationship" under Rule 1.9. Obj. 10, ECF No. 107.² In service of completeness, Judge Miller analyzed whether, if Kragel *had* been Francis' client, Francis' representation of WAPA would violate Rule 1.9; it is to this discussion that Kragel objects. Mem. Dec. 12, 2022, at 21-22, ECF No. 105. As Judge Miller's holding that the Rule does not apply to Kragel was not contrary to law, it is unnecessary to address Kragel's arguments as to how it *would* apply had he actually been a former client.

Finally, Kragel challenges Judge Miller's factual findings as to the chronology of this case. *See* Obj. 2, ECF No. 107. Judge Miller discussed the timing and potential motivations of Kragel filing this motion in assessing whether he had waived his right to challenge Francis' representation of WAPA. *See* Mem. Dec. 12, 2022, at 10, ECF No. 105. However, while she expressed reservations about Kragel's timeliness, Judge Miller denied the motion on the merits rather than for procedural error. *Id.* at 11. As such, Kragel's objections to Judge Miller's characterization of the facts is immaterial, given that the decision to deny the motion did not involve the challenged facts' application.

Judge Miller's decision is neither clearly erroneous nor contrary to law. Kragel has failed to meet his burden in showing that Francis must be disqualified from representing WAPA due to her prior involvement in the Thomas matter. As such, Kragel's objections will be overruled.

An appropriate order follows.

                                                  BY THE COURT:

                                                  /s/ Juan R. Sanchez
                                                  Juan R. Sánchez, C.J.

---

² Confusingly, Kragel actually agrees that Rule 1.9 does not apply, because both cases are "pending and active." Obj. 9-10, ECF No. 107. However, he then goes on to argue that Judge Miller applied the Rule incorrectly. *Id.* at 10-11.