## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| MARK KRAGEL,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>VI WATER & POWER AUTHORITY, LAWRENCE KUPFER, and ANTHONY THOMAS,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　CIVIL NO. 2021-78<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION and ORDER

This matter is before the Court on Mark Kragel's Motion for Sanctions. [ECF 185]. Defendants Virgin Islands Water and Power Authority ("WAPA"), Lawrence Kupfer, and Anthony Thomas opposed the motion [ECF 190], and Kragel filed a reply [ECF 191]. The matter is ripe for decision.

### I.　PROCEDURAL HISTORY

Kragel filed his Verified Complaint on October 25, 2021. Compl. [ECF 1]. Kragel brought causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that defendants violated his First Amendment rights, in that they unlawfully terminated his employment as WAPA's Deputy Legal Counsel because of his Facebook comment criticizing the Black Lives Matter movement. *E.g.*, *id*. ¶ 96; *see also* Am. Compl. [ECF 90] at 26–32. WAPA employed plaintiff in the Office of the General Counsel from 2009 or 2010 until 2015. [ECF 90] ¶ 14; [ECF 11] ¶ 10. He then returned to work in the Office of the General Counsel in 2019 until his termination in June 2020. [ECF 90] ¶¶ 15, 70, 88, 108; [ECF 11] ¶ 11. At the time of the events underlying plaintiff's claims, defendant Thomas served as WAPA's Chairman of the Board, and defendant Kupfer served as WAPA's Executive Director and CEO. [ECF 90] ¶¶ 3–4; [ECF 11] ¶¶ 3–4.

*Mark Kragel v. VI Water & Power Authority, et al.*
Civil No. 2021-78
Page 2

The parties served initial disclosures in February 2022 and on March 7, 2022, after all defendants had appeared, the Court entered a Trial Management Order ("TMO") to govern discovery and to schedule trial. [ECF 37]. The TMO provided for a deadline to complete fact discovery of July 31, 2022, and that the parties had to commence mediation by August 15, 2022. *Id.* ¶¶ 3–4. The parties served written discovery requests during March 2022. [ECFs 38, 39]. Thereafter, they encountered numerous issues with responses to written discovery. On July 11, 2022, plaintiff filed a motion to compel [ECF 61], which the Court denied without prejudice because plaintiff had not requested a discovery conference with the Court prior to filing the motion.[1] On August 19, 2022, the parties mediated the matter but were unable to settle. [ECF 91]. Ten days later Kragel moved to amend his complaint, which defendants opposed. [ECFs 76, 77, 79]. Fact discovery proceeded into September 2022, at which time Kragel filed a motion to disqualify defendants' counsel, as well as another motion to compel discovery responses. [ECFs 78, 80].

At a conference on September 15, 2022, the Court granted the motion to amend with the First Amended Verified Complaint modified as discussed at the conference, set briefing schedules on several pending motions, and otherwise stayed discovery and other motion practice until the issue of disqualification was resolved. [ECF 87].[2] On December 22, 2022, the Court denied the motion to disqualify counsel. [ECF 105].

---

[1] The Trial Management Order, in paragraph 8, requires that a discovery conference take place prior to the filing of discovery motions. [ECF 37].

[2] The Court's Order memorializing the issues discussed at the September 15, 2023 conference was filed on September 16, 2023. [ECF 87]. That Order stated that discovery was "stayed until further order of the Court."

*Mark Kragel v. VI Water & Power Authority, et al.*
Civil No. 2021-78
Page 3

On March 16, 2023, Kragel moved for partial summary judgment on the issue of liability. [ECFs 116, 117, 118].³ At a conference with the parties on May 15, 2023, the Court noted that in its view the stay it had previously ordered was no longer in effect. [ECF 125]. The Court denied the second motion to compel, requiring the parties to meet and confer with an eye toward narrowing the remaining discovery, and established deadlines for briefing the motion for summary judgment and for answering the amended complaint. *Id*. On July 28, 2023, defendants filed a cross motion for summary judgment. [ECF 154].

Discovery continued in the ensuing months, with the parties taking several depositions, including one of Lorelei Farrington, former General Counsel to WAPA. Fact discovery concluded on September 30, 2023. On October 14, 2023, Kragel filed the instant motion for sanctions. [ECF 185].

## II.   APPLICABLE LAW

District courts have inherent authority and broad discretion to use sanctions when necessary to ensure compliance with pretrial orders. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007). In addition, the Federal Rules of Civil Procedure authorize sanctions for violations of pretrial orders and discovery orders. If a party fails to obey an order to provide or permit discovery, the Court "may issue further just orders" providing various kinds of relief. Fed. R. Civ. P. 37(b)(2)(A); *see also* Fed. R. Civ. P. 37(c)(1) (imposing sanctions for failure "to provide information or identify a witness as required by Rule 26(a) or (e)"). Further, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

---

³ The dispositive motion filing deadline established in the TMO was February 28, 2023. [ECF 37] ¶ 11.

unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763 (1980) ("Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders.").

Federal discovery is premised upon good faith cooperation among the lawyers and the parties. *See* Fed. R. Civ. P. 37(f).[4] When this cooperation is lacking, "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway*, 447 U.S. at 763–64 (internal quotations and citation omitted).

"[T]he list of sanctions provided by Rule 37(b)(2)(A) is not exhaustive, and the decision to impose sanctions is 'generally entrusted to the discretion of the district court.'" *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n (Bowers II)*, 475 F.3d 524, 538 (3d Cir. 2007)). However, "Rule 37(b)(2)(A) is not equivalent to carte blanche; it limits courts' discretion in two ways: 'First, any sanction must be "just"; second, the sanction must be *specifically related* to the particular "claim" which was at issue in the order to provide discovery.'" *Id.* (quoting *Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995)). As the Third Circuit has explained:

---

[4] As the Supreme Court has observed,

> A number of factors legitimately may lengthen a lawsuit, and the parties themselves may cause some of the delays. Nevertheless, many actions are extended unnecessarily by lawyers who exploit or abuse judicial procedures, especially the liberal rules for pretrial discovery. The glacial pace of much litigation breeds frustration with the federal courts and, ultimately, disrespect for the law.

*Roadway*, 447 U.S. at 757 n.4 (internal citations omitted).

> Both of these limitations are rooted in notions of due process. The first represents the general due process restrictions on the court's discretion. The second requires that a specific nexus exist between the sanction imposed and the underlying discovery violations. Or put differently, it requires that the unproduced discovery be sufficiently material to the administration of due process to support a presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit.

*Id.* at 581 (internal quotations and citations omitted). "Within the context of these principles, the Court is to assess the culpability of the offending party and the prejudice to the party seeking sanctions." *Craig v. Kelchner*, 2010 WL 528331, at *2 (M.D. Pa. Feb. 11, 2010).

"Rule 37(b)(2)(C) does not require a finding of bad faith or intentional wrongdoing to justify awarding sanctions." *Miller v. Thompson-Walk*, 2019 WL 2150660, at *9 (W.D. Pa. May 17, 2019); *see, e.g.*, *Tracinda Corp.*, 502 F.3d at 242 ("regardless of the reason for the failure to produce these documents, the fault for this production failure and the related delays and proceedings which followed, lies with Defendants" (quoting district court opinion)). Thus, whether an award of expenses is "unjust" does not turn on a party's lack of intent or negligence, but rather "invite[s] a consideration of the degree of the sanction in light of the severity of the transgression which brought about the failure to produce." *Tracinda Corp.*, 502 F.3d at 241 ("whether a failure to produce is intentional, negligent, or inadvertent is a significant factor in assessing the severity of the transgression"). "The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Deitrick v. Costa*, 2019 WL 6717839, at *4–5 (M.D. Pa. Dec. 10, 2019) (finding sanctions would be appropriate under Rule 37(c)(1) where plaintiff did "not suggest that her failure to disclose certain records was an 'honest mistake' or inadvertent"); *see also Miller*, 2019 WL 2150660, at *9 ("Where withheld documents are clearly relevant and discoverable, parties are not substantially

*Mark Kragel v. VI Water & Power Authority, et al.*
Civil No. 2021-78
Page 6

justified in failing to disclose them."); *Tracinda Corp.*, 502 F.3d at 241 ("in the context of Rule 37 sanctions, 'substantial justification' occurs when there is a 'genuine dispute concerning compliance'" (citation omitted)); *see, e.g.*, *Craig*, 2010 WL 528331, at *3 (imposing sanction requiring defense counsel to remit $50 to the court every day until turning over all discovery to plaintiff).

Additionally, a court has the power to sanction counsel for bad faith conduct pursuant to its inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–52 (1991); *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (noting a court's inherent power "extends to the regulation of attorneys"); *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 566 (3d Cir. 1985) (federal courts have the power "to sanction errant attorneys financially" (citing *Roadway*, 447 U.S. at 765)).[5] "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 2001) (quoting *Chambers*, 501 U.S. at 44). "Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Id.*

A court may only use its inherent power to assess attorney's fees as a sanction in narrowly defined circumstances. *Roadway*, 447 U.S. at 765. These rare situations are, for example, when a party has engaged in egregious acts such as litigating in bad faith, abusing judicial processes, or threatening witnesses with violence. *See, e.g.*, *Republic of Philippines*, 43 F.3d at 73–74; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975) (party who "has acted in bad

---

[5] "[G]enerally a court should not resort to [] sanctions" pursuant to its inherent power where bad-faith conduct in the course of litigation can be adequately addressed by other sanctioning provisions. *Ferguson*, 454 F. App'x at 112; *see Chambers*, 501 U.S. at 50 ("But if in the informed discretion of the court, neither the statute [i.e., 28 U.S.C. § 1927] nor the Rules are up to the task, the court may safely rely on its inherent power.").

*Mark Kragel v. VI Water & Power Authority, et al.*
Civil No. 2021-78
Page 7

faith, vexatiously, wantonly, or for oppressive reasons" subject to sanctions pursuant to a court's inherent power (citation omitted)).

Finally, a court may impose sanctions pursuant to 28 U.S.C. § 1927. To do so, "a court must find that an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Toy v. Plumbers & Pipefitters Loc. Union No. 74 Pension Plan*, 317 F. App'x 169, 172 (3d Cir. 2009).[6] To the extent a party seeks "costs" and "expenses" under § 1927, in addition to attorney's fees, such costs and expenses are limited to those enumerated in § 1920. *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995). Moreover, a party is entitled to only those attorney's fees, costs, and expenses that result from the particular misconduct. *Id*. While § 1927 grants courts the authority to impose sanctions for misconduct by attorneys, "it is a power which the courts should exercise only in instances of a serious and studied disregard for the orderly process of justice." *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3d Cir. 1989) (quotation marks and citation omitted).

### III.    DISCUSSION

Kragel states generally that he seeks sanctions because defendants obstructed the discovery process, misrepresented facts in the summary judgment motion practice, and caused plaintiff to have to spend time litigating in violation of his rights under Federal Rule of Civil Procedure 1. [ECF 185] at 1. More specifically, he complains that in briefing summary judgment, defendants

---

[6] 28 U.S.C. § 1927 provides as follows:

> Any attorney . . . admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

set out facts that were contradicted by deposition testimony. *Id.* at 4–15. He points out that just prior to Farrington's deposition, defendants produced many redacted emails and an extensive privilege log, *id.* at 5–6, but they never produced an insurance policy, *id.* at 16. Kragel asks that (1) judgment be entered in his favor on liability, (2) defendants be ordered to produce unredacted emails for the Court to review *in camera*, so that plaintiff can seek costs in connection with motion practice, (3) unless defendants "voluntary withdraw all boilerplate objections, misrepresentations, and conclusory statements contrary to sworn testimony and/or without supporting factual bases," plaintiff be permitted to submit his costs and attorney's fees for his motions to compel, and (4) the Court put "Defendants and Defense Counsel [] on notice that further convoluted, vexatious arguments will warrant an award pursuant to 28 U.S.C. § 1927 for costs and fees." *Id.* at 17–18.

In response, defendants first point out that Kragel failed to comply with local rules requiring good faith conferences to occur prior to filing certain motions. [ECF 190] at 1–3. They next assert that plaintiff is seeking to compel production of materials after the close of discovery. *Id.* at 3–4. Further, defendants characterize the motion as an improper surreply on summary judgment, given that it addresses extensively the merits of the claims. *Id.* at 4–6. Next, defendants argue that plaintiff has not shown entitlement to sanctions under § 1927, or on any other basis. *Id.* at 6–12. Finally, defendants contend they fully complied with their discovery obligations. *Id.* at 12–15.

Kragel replies that he seeks sanctions for "knowingly asserting false representations since the inception of this lawsuit and continuing into the summary judgment motion practice." [ECF 191] at 2. He clarifies that he does not seeks sanctions to be imposed under § 1927, but rather to place defendant on notice that such sanctions might be possible. *Id.* at 3. Kragel urges that

defendants' "egregious" conduct is sanctionable under Federal Rule of Civil Procedure 26(g) and 37, and the Court's inherent power. *Id.* at 5.

The Court finds that none of plaintiff's expressed grievances warrant sanctions in the circumstances described here. Viewed as a whole, the motion is directed far more to the merits of plaintiff's summary judgment motion and claim than to any conduct for which sanctions might be available. Plaintiff cited no statute, rule or other basis for an entitlement to sanctions, or any case law, other than a brief reference in his reply memorandum to several rules and the Court's inherent authority. And nowhere does plaintiff set forth in detail the specifics underlying his allegations of obstruction and vexatiousness, or connect any particular conduct to specific relief sought. In short, the motion is replete with generalized complaints but lacks specifics. Moreover, plaintiff does not explain why his requests for *in camera* review of documents on the privilege log or insurance policies could not be brought prior to the close of fact discovery.[7] And finally, asking the Court to put a party on notice that sanctions could be levied for some future conduct simply accomplishes nothing. On this record, plaintiff's frustration is evident; it does not, however, support sanctions.

## IV. CONCLUSION

Accordingly, for the forgoing reasons, and the premises considered, it is hereby ORDERED that plaintiff Mark Kragel's Motion for Sanctions [ECF 185] is DENIED.

Dated: March 13, 2024

S\_____
**RUTH MILLER**
United States Magistrate Judge

---

[7] The conditional request to submit a claim for costs and fees related to plaintiff's two motions to compel is hard to understand when both motions were denied.